UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | |
|---|---|
| FRANKLIN ARCANGEL OLIVEROS-PAEZ,<br><br>    Petitioner,<br><br>v.<br><br>WARDEN, EDEN DETENTION CENTER, et al.,<br><br>    Respondents. | No. 6:26-CV-004-H |

### ORDER

The Fifth Circuit recently held that aliens who are present in the United States without previously being admitted by immigration authorities—also known as "applicants for admission"—must be detained under the INA. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). Franklin Arcangel Oliveros-Paez, a native and citizen of Venezuela, is one such alien, having illegally entered the United States several years ago. His habeas petition, filed before the Fifth Circuit's decision in *Buenrostro-Mendez*, demands either his release or a bond hearing based on the text of the INA and the Fifth Amendment's Due Process Clause. Dkt. No. 1.

In light of *Buenrostro-Mendez*, Oliveros-Paez's due process claim is the only remaining non-foreclosed issue. But neither the substantive nor procedural veins of due process afford alien petitioners a bond hearing. Due process is a contextual concept, and in the context of alien removal, it is a limited one. Congress determined that aliens like Oliveros-Paez are not entitled to bond, but they are permitted to remain in U.S. custody and fight to remain here. That is more than sufficient process so far as the Due Process Clause is concerned. Therefore, the petition (Dkt. No. 1) is denied.

1. **Background**

In 2022, Oliveros-Paez was detained while illegally crossing into the United States near San Luis, Arizona. Dkt. No. 1 ¶¶ 27–28. Amidst a wave of illegal entries across the U.S.-Mexico border and a resulting lack of space to hold detainees, ICE released Oliveros-Paez into the United States. Dkt. No. 1-1 at 3–4. At the same time, ICE issued Oliveros-Paez a Notice to Appear. *Id.* at 2. The NTA charged him with removability as an alien "present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." *Id.*; *see* 8 U.S.C. § 1182(a)(6)(A)(i). In December 2025, ICE re-detained Oliveros-Paez during a routine check-in at the Dallas Field Office. Dkt. No. 1 ¶ 33. Oliveros-Paez is in custody at the Eden Detention Center in Eden, Texas. *Id.* ¶ 2.[1]

Oliveros-Paez is held without bond and neither requested nor received a bond hearing. *Id.* ¶ 18. That is because the BIA's opinion in *Yajure Hurtado* holds that aliens present in the United States without admission must be detained without bond under

---

[1] Venezuelan nationals in the United States were previously permitted to remain with Temporary Protected Status. The Northern District of California enjoined the Trump Administration's termination of TPS status for Venezuelan nationals, but the Supreme Court subsequently stayed the injunction. *Noem v. Nat'l TPS All.*, 606 U.S. ___, 146 S. Ct. 23 (2025). In January 2026, the Ninth Circuit affirmed the Northern District's decision. *See* ___ F.4th ___, 2026 WL 226573 (9th Cir. Jan. 28, 2026). But because the Supreme Court's stay remains in place until the "disposition of a petition for a writ of certiorari, if such writ is timely sought," the stay remains in place. 146 S. Ct. at 24.

Section 1225(b)(2)(A) of the INA for the duration of their removal proceedings. 29 I. & N. Dec. at 220.[2]

Instead, Oliveros-Paez filed a petition for a writ of habeas corpus. Dkt. No. 1. The petition states two claims for relief. First, Oliveros-Paez alleges that his detention without bond violates the INA. *Id.* ¶¶ 78–83. He argues that Section 1225(b)(2)(A) does not apply to aliens who, like him, previously entered the United States illegally and have been living in the country prior to being apprehended and placed in removal proceedings. *Id.* ¶ 81. Second, Oliveros-Paez contends that his detention without bond violates his due process rights. *Id.* ¶¶ 69–77.

The Court ordered the respondents to show cause why Oliveros-Paez's petition should not be granted. Dkt. No. 4; *see* 28 U.S.C. § 2243. The respondents timely answered (Dkt. Nos. 8; 9) and Oliveros-Paez replied (Dkt. No. 10).

While litigation was underway in this case, the Fifth Circuit issued its decision in *Buenrostro-Mendez*, which agreed with *Yajure Hurtado* and upheld the government's mandatory-detention policy under Section 1225. *See* 166 F.4th at 498. The Fifth Circuit turned to the plain language of Section 1225, which provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A).

---

[2] On February 18, 2026, the Central District of California purported to vacate *Yajure Hurtado*. *Maldonado Bautista v. Santacruz*, ___ F. Supp. 3d ___, No. 5:25-CV-1873, 2026 WL 468284 (C.D. Cal. Feb. 18, 2026). But as the Court explained in *Calderon Lopez v. Lyons*, the Central District lacks authority to enter such relief. ___ F. Supp. 3d ___, No. 1:25-CV-226, 2025 WL 3683918, at *10–14 (N.D. Tex. Dec. 19, 2025). *Yajure Hurtado* binds immigration judges, meaning it would be "an exercise in futility" to seek a bond hearing. *Garner v. U.S. Dep't of Lab.*, 221 F.3d 822, 825 (5th Cir. 2000). Thus, Oliveros-Paez's petition does not present an exhaustion problem. *Id.*

The Fifth Circuit found "no material disjunction" between the phrases "applicant for admission" and "seeking admission," and thus concluded that all applicants for admission fall within Section 1225(b)(2)(A)'s grasp. *Buenrostro-Mendez*, 166 F.4th at 502 (quoting *Garibay-Robledo v. Noem*, ___ F. Supp. 3d ___, No. 1:25-CV-177, 2026 WL 81679, at *5 (N.D. Tex. Jan. 9, 2026)).

2.  **Legal Standard**

"[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). With 28 U.S.C. § 2241, Congress authorized federal courts to resolve habeas petitions, including in immigration-detention cases. *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001). Habeas exists solely to "grant relief from unlawful imprisonment or custody." *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976). Thus, for the writ to issue, the petitioner must be "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995). A court considering a habeas petition must "determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

3.  **Analysis**

As noted above, Oliveros-Paez raises two claims in his habeas petition—one involving Sections 1225 and 1226 of the INA, and another based on the Fifth Amendment's Due Process Clause. Dkt. No. 1 ¶¶ 69–83. As explained below, *Buenrostro-Mendez* forecloses Oliveros-Paez's statutory claim. Thus, the only claim left for consideration is his due process claim. The Court has considered whether the Due Process Clause entitles

illegal aliens to individualized bond hearings in numerous prior cases.³ Even so, the Court considers the arguments raised in Oliveros-Paez's briefing to address whether bond-less detention of aliens present in the United States violates the Constitution. The answer is no.

### A. *Buenrostro-Mendez* forecloses Oliveros-Paez's INA claim.

Oliveros-Paez does not directly address whether he is an "applicant for admission" within the meaning of Section 1225(a)(1). But it is apparent that he is one. Section 1225 broadly defines "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). Oliveros-Paez is an "alien." He is "present in the United States." And he "has not been admitted" because he did not "lawful[ly] ent[er] [the country] after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13)(A) (defining "admission" and "admitted"). As an applicant for admission, binding Fifth Circuit precedent requires that he be detained without bond under Section 1225(b)(2)(A). *See Buenrostro-Mendez*, 166 F.4th at 498. Thus, Oliveros-Paez's INA claim fails.⁴

### B. The Due Process Clause does not require the government to give Oliveros-Paez a bond hearing.

Next is Oliveros-Paez's claim that the government's refusal to provide a bond hearing violates the Due Process Clause of the Fifth Amendment. Dkt. No. 1 ¶¶ 69–77.

---

³ *Higareda-Cano v. Noem*, No. 1:25-CV-225, Dkt. No. 13 (N.D. Tex. Jan. 30, 2026); *Goyo Martinez v. Villegas*, No. 1:25-CV-256, 2026 WL 114418 (N.D. Tex. Jan. 15, 2026); *Garibay-Robledo*, 2026 WL 81679; *Gomez Hernandez v. Lyons*, No. 1:25-CV-216, 2026 WL 31775 (N.D. Tex. Jan. 6, 2026); *Montelongo Zuniga v. Lyons*, ___ F. Supp. 3d ___, No. 1:25-CV-221, 2025 WL 3755126 (N.D. Tex. Dec. 29, 2025).

⁴ Even if this Court were not bound by *Buenrostro-Mendez*, it would have reached the same result for the reasons discussed in its numerous prior decisions on this issue. *Supra*, n.3. Furthermore, the fact that Oliveros-Paez was released on a Form I-220A (*see* Dkt. Nos. 1 ¶ 29; 1-1 at 3–4) was not a form of admission. *See Goyo Martinez*, 2026 WL 114418, at *3–4, 7.

Because *Buenrostro-Mendez* did not directly address this question, the Court turns to Oliveros-Paez's arguments. Oliveros-Paez frames his argument as a matter of procedural due process. *See id.* ¶ 72 n.2. To the extent his petition raises substantive due process concerns, the Court addresses that doctrine as well. But either way, Oliveros-Paez is not entitled to relief.

Start with substantive due process. That doctrine protects "only 'those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition.'" *Dep't of State v. Muñoz*, 602 U.S. 899, 910 (2024) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997)). While still recognizing due-process rights for aliens present in the United States, *see, e.g.*, *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025), the Supreme Court has long affirmed the constitutionality of executive immigration procedures. The "through line of history," the Supreme Court recently explained, is "recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens." *Muñoz*, 602 U.S. at 911–12. To that end, "Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 80 (1976).

The principle is no less true for immigration detention. In fact, the Supreme Court has endorsed the constitutionality of detaining aliens without bond during the pendency of removal proceedings. In *Demore v. Kim*, the Supreme Court acknowledged that "the Fifth Amendment entitles aliens to due process of law in deportation proceedings." 538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). But it clarified that "detention during deportation proceedings" is nevertheless a "constitutionally valid aspect of the deportation process." *Id.* Indeed, "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to

accomplish its goal." *Id.* at 528. It follows that "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Id.* at 526. Against that backdrop, the notion that substantive due process requires a bond hearing is untenable.

A procedural due process claim fares no better. As an "applicant for admission," Oliveros-Paez has "only those rights regarding admission that Congress has provided by statute." *DHS v. Thuraissigiam*, 591 U.S. 103, 140 (2020); *see Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("This Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative.").

Despite this, Oliveros-Paez's claim relies on the three-factor balancing test from *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See* Dkt. No. 1 ¶¶ 72–77. The *Mathews* test, while common, is not the only tool for resolving procedural due process challenges. The Supreme Court said as much: "[W]e have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims." *Dusenbery v. United States*, 534 U.S. 161, 168 (2002). In fact, the "Supreme Court when confronted with constitutional challenges to immigration detention has not resolved them through express application of *Mathews*." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).

The application of *Mathews* to Section 1226 cases is "unwarranted on the test's own terms." *Ladak v. Noem*, ___ F. Supp. 3d ___, No. 1:25-CV-194, 2025 WL 3764016, at *7 (N.D. Tex. Dec. 30, 2025). The Supreme Court applied *Mathews* in *Landon v. Plasencia*, emphasizing that its balancing test was appropriate for "long-time lawful permanent resident[s]" in contrast to "detentions of aliens at the border or returning lawful permanent

residents who had spent time abroad." *Id.* (citing 459 U.S. 21, 32–34 (1982)). Aliens in the former category have "gain[ed] admission to our country and [have begun] to develop the ties that go with permanent residence," meriting a level of due process more analogous to that of a citizen. *Landon*, 459 U.S. at 32. In the latter category, aliens "request[] a privilege and [have] no constitutional rights." *Id.*; *Thuraissigiam*, 591 U.S. at 138–39 ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.") (quotation omitted). Critically, aliens who are released into the United States pending removal "are treated for due process purposes as if stopped at the border." *Thuraissigiam*, 591 U.S. at 139 (internal quotation marks omitted); *see* 8 U.S.C. § 1182(d)(5)(A) (noting that paroled aliens are not admitted and are "dealt with in the same manner as that of any other applicant for admission to the United States"); 8 C.F.R. § 1.2 (same).[5]

With Section 1225, Congress set the procedural rights afforded to aliens who are present in the United States without admission. "Read most naturally," Section 1225(b)(2)(A) "mandate[s] detention of applicants for admission until certain proceedings have concluded." *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018). No part of the statute "says anything whatsoever about bond hearings." *Id.* Accordingly, Oliveros-Paez is not entitled to a bond hearing as a matter of procedural due process.

---

[5] Oliveros-Paez's petition claims that "[t]he Fifth Circuit follows the Supreme Court's framework in *Mathews v. Eldridge*," and that this Court is therefore required to apply it. *See* Dkt. No. 1 ¶ 72 n.2 (citing *Meza v. Livingston*, 607 F.3d 392 (5th Cir. 2010)). But the Fifth Circuit applied *Mathews* to a felon challenging the imposition of "sex offender conditions to his mandatory supervision." 607 F.3d at 395. For the reasons explained above, aliens are rarely entitled to this level of due process in immigration cases as a matter of Supreme Court precedent. *Meza* is not to the contrary.

## 4. Conclusion

In short, Oliveros-Paez, as an "applicant for admission," is properly detained without bond under Section 1225(b)(2)(A). *Buenrostro-Mendez*, 166 F.4th at 498. And the Due Process Clause does not require a bond hearing in these circumstances. Thus, the petition for a writ of habeas corpus (Dkt. No. 1) is denied.

So ordered on March 12, 2026.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE